Haight, J.
The original complaint in this action prayed judgment for the construction of the last will and testament of William H. ■ Pickell, deceased, and that some person be appointed by the court to carry into effect the power incorporated in the will; that certain of the defendants be ordered and decreed to account for the rents, issues and profits accruing from the real estate occupied by them, .and for such other and further or different relief as to the *161 ■court may seem just and equitable. The first trial commenced under this complaint and the evidence on the part of the plaintiff was taken; thereupon the defendant moved to dismiss the complaint; the case was adjourned, and the decision of the court reserved. Subsequently, a default was taken and opened upon terms, and leave to amend the -complaint granted; thereupon the trial again proceeded, and the plaintiff gave further evidence. Another motion was then made to amend the complaint, changing it into -an action for partition. This motion was granted, the trial suspended, and the case put over the term. At another "term of court the case was again brought to trial, resulting in the judgment appealed from.
It is now contended, on the part of the appellant, that these orders permitting the plaintiffs to amend their complaint may properly be reviewed on the appeal in this case; that they were orders made during the trial; whilst the respondents move to dismiss the appeal in so far as it attempts to appeal from these orders, upon the ground that the order amending the complaint was made at special term, was duly entered, and a copy served, and that the time to appeal therefrom had expired before the appeal was taken herein.
We have not thought it necessary to discuss the questions raised by the motion to dismiss the appeal, for the reason that in this case the trial was suspended, the case went ever the term, and the amendment cannot, therefore, properly be treated as one made upon the trial, so that it is not •open to the objection that the cause of action was changed during the trial, and the party compelled to proceed therewith-without an opportunity to prepare for the trial of the new cause of action. The motion to amend was such as the special term had the power to grant before trial, and the court having suspended the trial that had been commenced, and put the case over the term, we are of the opinion that the order should be treated as one made before the trial.
Upon the trial of this action the court found the following facts:
That William H. Pickell died August 20, 1859, the owner in fee of the real estate referred to in his will, described as:
“All that tract or parcel of land situate partly in the town of North Dansville, Livingston county, New York, and partly in the town of Wayland, Steuben county, being the same premises usually called Eushridge, and which were occupied on the llth day of September, 1863, by William W. Squires, containing 240 acres, more or less;” that he left a last will and testament which had been duly proved and admit *162 ted to probate, and that by the fifth and sixth clauses thereof he gave to his wife Nancy a life estate in the premises, with a remainder over"to the children óf a sister of this testator, called’ in the will Sister Shannon, and to the children of his_ brother John Pickell, with a special' pówér to’ his’wido'W~ Nancy, to select from such class or classes’of the remainder-men as she' should see fit, those who should take the fee of Jihe lands, and that his mother, Elizabeth, was to receive during her fife time a suitable support out of the property, real and personal, of the testator; that on the 17th day of September, 1863, a deed was executed and delivered by Nancy Pickell and Elizabeth Pickell to John Pickell of the farm in question, containing the following recital:
“That whereas said John Pickell lays claim to the lands hereinafter mentioned, having deeds for a part of the same and having advanced the ¡lurchase-money for the whole thereof, and whereas the parties of the first part claim an interest in the same by virtue of the will of the late William H. Pickell; now, therefore, in settlement of all of these said claims and all differences between said parties, and in pursuance of the power given by said will to said Nancy Gr. Pickell to dispose of the said lands according to her discretion, after her decease, and in consideration of the agreement of the said John Pickell, bearing even date herewith, to pay to the said parties of the first part the annual sum of $125, the said parties of the first part have granted, released and conveyed, etc.” «
The court further found as facts that Elizabeth Pickell, the mother of William H. Pickell, died in the year 1868; that Nancy Pickell, his widow, died in the year' 1873; that John Pickell, his brother, died in the year 1869, intestate, and that Sarah Shannon, the sister, died July 1, 1880; that William H. Pickell died leaving no children; that his mother, brother and sister were his next of kin and only heirs-at-law; that the plaintiffs and defendants are the children and grand-children of his brother and sister or the wives of such children.
It is contended in the first place that the children of John Pickell are seized as the owners in fee of the lands in question through the deed of Nancy and Elizabeth Pickell to their father John Pickell.
The question thus presented involves a construction of the will for the purpose of determining whether or not Nancy Pickell had the power to convey the fee of the land in question. It provides:
‘ ‘ Fifth. I do give and bequeath unto my dear and beloved wife, Nancy Gr. Pickell, all moneys, notes, judgments, bonds, mortgages and other evidences of debt which may-remain due after the foregoing directions are fulfilled. *163 Also, all my real estate, to wit: “ My farm situate on the road leading to Bath, now leased to William Squires, con-taming about 200 acres; my farm in Ossian, containing about 180 acres, and my home lot in the village of Dansville, containing about one acre of land, with all the appendages thereunto belonging or appertaining, to have the control and management and benefit of the same during her life time. And I further order and direct that from the avails of my estate my aged mother shall have a comfortable living and support during her fife time, with all needful comforts in sickness, and that my executor shall see that, this order is faithfully executed.
Sixth. I further order and direct that after the decease of my mother and sister Shannon, and my wife, Nancy G. Pickell, the remainder of my estate, should there be any, shall be divided among the children of my sister Shannon and the children of my brother, John Pickell, according to the discretion and judgment of my wife, Nancy G. Pickell,. as she shall direct.”
It is not questioned but that the widow, under the will,, took a life estate with a remainder over to the children of John Pickell and Sarah Shannon, and that there was a special power in trust given to the widow to distribute the estate among these children according to her discretion; but it will be observed that she was to divide it among the children. She was not given the power to take it absolutely from them and give it to any other person or persons. She was not clothed with the title or with any power of disposition of the real estate except to exercise her discretion in distributing it among these children. By the deed in question she conveyed the premises to John Pickell, her brother-in-law; he was not mentioned in the will as a remainder man,, and if the deed had the effect to convey the fee to him, he' had it in his power to sell and convey the premises to other*' persons, and thus absolutely and forever deprive these children of any interest in the same, and thus completely defeat the object of the will. It does not appear to us that this power was given to her, and that the deed executed and. delivered by her and Elizabeth Pickell, the mother, to John Pickell, must be considered as a deed conveying their interests in the premises only, and that it is not an execution off the power given to the widow by the will to distribute among the children according to her discretion.
In reference to the question of title a more serious question is presented. The complaint alleged, and the court, as we have seen, found that William Pickell died seized and the owner in fee of the Rushridge farm, so called, containing 240 acres of land.
The answer of the defendants admitted that William H„ *164 Pickell died having the paper title to a portion only of the farm, and denied that. he had title to the whole thereof, and alleged, upon information and belief, that John Pickell, the father of the defendants, was the owner in fee of a portion thereof. It is contended by the appellant that this issue raised in reference to the title could not be tried and disposed of in the action in partition; but we think there is nothing in this claim, for the question in reference to the title was between the parties to the action, and only went to the proportionate share that the parties were entitled to.
Section 1543 of the Code provides: “The title or interest of the plaintiff in the property, as stated in the complaint, may be controverted by the answer. The title or interest of any defendant in the property, as stated in the complaint, may also be controverted by his answer, or the answer of any other defendant; and the title or interest of any defendant as stated in his answer, may be controverted by the answer of any other defendant. A defendant thus con.troverting the title or interest of a co-defendant must comply with section 521 of this act. The issues joined as prescribed in this section must be tried and determined in the action.”
This section is new and is a substitute for the statute upon that subject, and it appears to us to give express authority to try such an issue as is raised by the pleadings-in this case.
The plaintiff, upon the trial, put in evidence a deed from William Hornby to William Pickell, dated January 22, 1849, recorded in Steuben county clerk’s office in fiber fifty of deeds, at folio twenty-two, conveying five different parcels of land amounting to 540.88 acres. The plaintiff, Robert H. Shannon, testified that the lands described in this deed, according to his recollection, were a part of the farm in question; whether or not the deed covered all the land embraced in the farm does not appear. It will be observed that in the description of the farm, as given in the complaint, no metes and bounds are given. It is simply described as “all that tract or parcel of land, situate partly in the town of North Dansville, Livingston county, and partly in the town of Wayland, Steuben county,. N.. Y.” The portion located in North Dansville and the portion located in Wayland is not given. The lots in which the farm is located are not given. It was. usually called Rush-ridge, and on the 17th of September, 1863, was occupied by William W. Squires as a tenant. So that from the description given in the complaint, or as found by the court, we are powerless to determine what portion of the farm was covered by the Hornby deed.
But, again, the plaintiffs also gave in evidence a.deed from *165 Harvey Montgomery as president of the Dansville Woolen Manufacturing company to Henry Peckell, dated March 10, 1821, and containing 6.73 acres of land.
The plaintiff, Robert H. Shannon, also testified that the land covered by this deed was also a part of the 240 acres. Henry Pickell was the father of William H. Pickell, John Pickell and Sarah Shannon, who were his only heirs-at-law. No evidence was given showing that Henry Pickell had ever conveyed this lot, and it must be presumed, therefore, that he died seized thereof. If so, it would follow that the title would descend to his three children, and that William H. Pickell would only become seized of an undivided one-third thereof, the other two-thirds going to John Pickell and Sarah Shamion. It conseqently appears from the plaintiff’s own showing that as to this parcel William. H. Pickell was not the owner of the whole thereof at the time of his decease, but that it was owned in common with his brother and sister.
Again, the defendants'introduced in evidence a deed from WyUys F. Clark and wife to William H. Pickell and John Pickell, dated November 29, 1831, containing six and one-half acres of land formerly belonging to the Dansville Manufacturing Company ; also lot No. 10 adjoining, containing nine and five-hundredths acres. From the description of this deed given in the appeal hook we are unable to determine the town in which this land was located. Other deeds were given in evidence by the defendants of lands located in the town of Sparta. The witness Vanderlip testified on behalf of the defendants that he was acquainted with the lands mentioned in the deeds introduced in evidence, among others the Clark deed, and he knew from general reputation and tradition that they were a part of the old factory pi’operty and that they formed a part of the Rushridge farm of 240 acres. If this is so, then the portion last described was owned by William and John Pickell together, and William was not the owner in fee of the whole thereof at the time of his death, as found by the court. There is another circumstance that is in accord with this theory of the case. William H. Pickell in his will describes the Rush-ridge farm as containing only 200 acres, whilst the plaintiffs, in their complaint, allege that it contains 240 acres, and the court has so found. The factory lot, so called, has been considered and treated, during this litigation, as a part of the Rushridge farm. It may not have been so treated by the testator. It consequently^ appears to us that the court erred in finding that William H. Pickell was the owner in fee of the entire 240 acres embraced in the Rush-ridge farm, at the time of his decease. The evidence does not show that he was such owner. On the contrary, the *166 deeds to which we have referred, tend to show that as to the factory lot he was only a part owner, and that John Pickell and Sarah Shannon each owned an interest therein. It is true, as the respondent claim, that the recital in the deed from Nancy Pickell and Elizabeth Pickell, to the effect that John Pickell was a part owner of the farm, has no right to be considered upon this question. Neither of those persons has the right by any admission made by them, to prejudice the rights of the parties to this action.
It is further contended on the part of the respondent that no exception was taken by the defendants to the finding of the court that William H. Pickell was the owner in fee of the 240 acres at the time of his death. No exception appears to have been taken to this finding of fact. Exceptions were taken, however, to the conclusions of law found; but it appears that when the plaintiff rested the defendants moved for a dismissal of the plaintiffs’ complaint upon the ground that the plaintiffs had not shown title. This motion was denied and an exception was taken. It consequently appears to us that this question is involved in the appeal.
Again, evidence was given attempting to show that William H. Pickell was in the possession of this farm and the whole thereof at the time of his death. The plaintiff, Robert H. Shannon, testified that at one time his father lived upon the farm. He was then asked: “At the time jour father occupied the farm in question, previous to 1845, under whom did he occupy?” This was objected to by the defendants as immaterial. The objection was overruled and an exception taken. He answered, “ Under William H. Pickell.” He was then asked: “While your father was in possession of the land and lived upon it, what did he say or state as to in what capacity he occupied it?” This was objected to and the objection overruled. The witness answered: “He told me he occupied it as a tenant of my uncle William, and that he permitted him to occupy it.” The witness further testified that all he knew about it was what his father had told him. The plaintiffs were therefore permitted by this ruling to give in evidence the declarations of their father, under whom they claim as heirs at law. It was the same as giving in evidence their own declarations in their own behalf. It does not appear that this was competent. It is quite possible that the deceased, William H. Pickell, was occupying the whole of the farm at the time of his death, but it appears that he also held a power of attorney from John Pickell, constituting him his true and lawful attorney and agent for him and in his lláme and for his own proper use and benefit, to do and transact all necessary business in anywise appertaining to the real estate belonging to John PickeU, in Steuben county; so that occu *167 pancy and control of the lands in question, he being concededly a part owner, would, under this power of attorney, be consistent.
The judgment should be reversed and a new trial ordered, with costs to abide the final award of costs.
Smith, P. J., and Bradley, J., concur; Barker, J., not present.